UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-61814-RKA

YACHT MANAGEMENT SOUTH
FLORIDA, INC,

              Plaintiff,

v.

LEIGH SMALL, *in personam*, and

M/V PACIFIER, a 1988 40' Magnum with
Hull Identification Number
MAG40044C888, its engines, equipment,
tackle, furnishings, and other
appurtenances, *in rem*,

              Defendants.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 25)

Plaintiff Yacht Management South Florida, Inc. ("Yacht Management") was hired to perform repairs on the vessel M/V Pacifier. The vessel's owner, Leigh Small, was not satisfied with the repairs and refused to pay for them. Yacht Management sued to foreclose a lien on the vessel to pay for the repairs. Mr. Small counterclaimed for breach of contract, breach of warranty of workmanlike performance, and deceptive and unfair trade practices. ECF No. 8. Yacht Management now moves for summary judgment on the counterclaims.

I have reviewed the Motion for Summary Judgment, ECF No. 25, Yacht Management's Statement of Material Facts, ECF No 24, Mr. Small's Response, ECF

No. 28, Yacht Management's Reply, ECF No. 32, and the parties' Joint Statement of Undisputed Facts. ECF No. 36. For the following reasons, it is recommended that summary judgment be GRANTED as to Counterclaim II and DENIED as to Counterclaims I and III.

## SUMMARY JUDGMENT

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." A fact is material if it "might affect the outcome of the suit under the governing law." The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.
> …
>
> The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor.

*Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1306–08 (S.D. Fla. 2014) (citations omitted). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "If more than one inference could be construed from the facts by a

reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

> The moving party's burden on a motion for summary judgment "depend[s] on whether the legal issues ... are ones on which the movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "[F]or issues on which the movant would bear the burden of proof at trial, 'that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (emphasis in original) (quoting *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. In State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). "For issues, however, on which the non-movant would bear the burden of proof at trial, 'the moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility.'" *Id.* (emphasis in original) (quoting *Four Parcels*, 941 F.2d at 1437–38).

*Nunez v. Coloplast Corp.*, 461 F. Supp. 3d 1260, 1264 (S.D. Fla. May 20, 2020).

Federal Rule of Civil Procedure 56 and Local Rule 56.1 mandate the procedure for pleading (and responding to) a Motion for Summary Judgment. Rule 56(c)(1) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Our Local Rules require even greater specificity. Each asserted or disputed fact must be "supported by specific, pinpoint references" to

particular parts of the record. S.D. Fla. L.R. 56.1(b)(1)(B), (b)(2)(A); *see also* Order Setting Trial and Pre-Trial Schedule, ECF No. 10 at 4. "The pinpoint citations shall reference pages and line numbers, if appropriate, of exhibits, designate the number and title of each exhibit, and provide the ECF number of all previously filed materials used to support the Statement of Material Facts. When a material fact requires specific evidentiary support, a general citation to an exhibit without a page number or pincite (e.g., 'Smith Affidavit' or 'Jones Deposition' or 'Exhibit A') is non-compliant." S.D. Fla. L.R. 56(b)(1)(B).

The Court has discretion to disregard a factual assertion or dispute that is not properly presented or supported. Fed. R. Civ. P. 56(e); S.D. Fla. L.R. 56.1(c), (d). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). A factual assertion that is not properly disputed may be deemed admitted "provided that: (i) the Court finds that the material fact is supported by

properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does

not apply." S.D. Fla. L.R. 56.1(c).

Judge Altman's trial order also requires:

> In addition to filing a Statement of Material Facts, as required under
> Local Rule 56.1(a), the parties shall also file a Joint Statement of
> Undisputed Facts, which must include all relevant facts about which
> there is no material dispute. Each undisputed fact shall be individually
> numbered and separated by paragraph. This filing is limited to 10 pages
> and does not otherwise change the parties' obligation to comply with
> Local Rule 56.1.

ECF No. 10 at 4.

## DISCUSSION

A. *Factual Record*

Before addressing the merits of the motion, it is necessary to sort out what

facts are properly before the Court.

In compliance with Local Rule 56.1, Yacht Management filed a 15 paragraph

Statement of Material Facts with pincites for each paragraph. ECF No. 24.

Mr. Small's response did not comply with the Local Rule. He did not file a separate,

paragraph-by-paragraph response to the Statement of Material Fact. Instead, he filed

a Response to Yacht Management's summary judgment motion which appended an

affidavit from Mr. Small and excerpts from Mr. Small's deposition. ECF Nos. 28, 28-

1, 28-2. The Response says, "Defendant has set forth the facts in dispute and

objections to Plaintiff's alleged material facts filed in this pleading." ECF No. 28 at 1.

In different parts of the pleading, Mr. Small then argues that specific facts are in dispute. *Id.*[1]

In its Reply, Yacht Management points out Mr. Small's non-compliance with the Local Rules and asks this Court to deem its entire Statement of Material Fact to be admitted. ECF No. 32 at 2. Yacht Management also argues that Mr. Small's affidavit should be disregarded because it improperly tries to contradict his sworn deposition testimony. *Id.* at 7.

Thereafter, the parties filed their Joint Statement of Undisputed Facts, which stipulated to the following facts:

1.     Plaintiff Yacht Management South Florida, Inc. is a full-service boatyard located in Fort Lauderdale, Florida (hereinafter, "Yacht Management").

2.     Individual Defendant Leigh Small is a resident of the State of Connecticut.

3.     *In rem* Defendant M/V Pacifier is a 1988 40' Magnum Motor Yacht (hereinafter, the "Vessel").

---

[1] Mr. Small's Response also argues for the first time that this Court lacks *in rem* admiralty subject matter jurisdiction. ECF No. 28 at 2-5. This argument ignores that Mr. Small's counterclaims — the only claims addressed in the summary judgment pleadings — are *in personam* claims and are brought under this Court's diversity jurisdiction. ECF No. 8 at 6. If Mr. Small wants to challenge the Court's subject matter jurisdiction over Yacht Management's claims, he should file a separate motion.

4.      On September 14, 2018, Mr. Small purchased the Vessel for $45,000.00. (Small Dep. 56:5-23).

5.      On November 14, 2020, Mr. Small contacted Yacht Management and requested that Yacht Management provide estimates to repair the Vessel. (Small Dep. 78:5-20).

6.      On December 4, 2020, Mr. Small received estimates from Yacht Management. (Small Dep. 98:14-17; 102:11-16).

7.      Mr. Small relied on his forty years of experience in the construction industry to evaluate the estimates from Defendant. (Small Dep. 110:11-20).

8.      On December 4, 2020, Mr. Small entered into a Service Agreement with Yacht Management to furnish the estimated repairs on the Vessel. (Small Dep. 129:4-21; Exhibit A).

9.      Prior to entering into the Service Agreement, Mr. Small had an opportunity to review the terms and conditions in the agreement. (Small Dep. 129:7-9).

10.     Prior to entering into the Service Agreement, Mr. Small never requested that any changes be made by Yacht Management. (Small Dep. 129:10-17).

11.     The Service Agreement contained the following terms *inter alia*:

Yacht Management warrants to Owner that its services will be performed in a competent manner and will be free from defects in workmanship and materials for a period of sixty (60) days after completion of the services. If any defects in workmanship and materials

are discovered, Owner shall promptly notify Yacht Management in writing thereof. Upon the return of the defective work to Yacht Management's facility in Fort Lauderdale, Florida, Yacht Management shall re-perform the defective portion of the service and will correct any damage to the vessel and/or equipment upon which this service was performed at the option of Yacht Management by either repairing or replacing any damaged part resulting from faulty service. It is specifically understood and agreed that no other warranties, express or implied, are or will be deemed to have been made by Yacht Management with respect to services performed by Yacht Management. The implied warranties of merchantability, workmanship and fitness are specifically disclaimed.

(Exhibit A, ¶ 15).

The vessel owner, whether corporate or individual, his heirs, successors, insurers and/or assigns hereby expressly release, acquit, discharge, indemnify and hold harmless Yacht Management, its officers, employees, agents, insurers, successors, contractors, subcontractors and/or assigns of and from all claims for damage to the vessel, its engines, equipment and appurtenances, damage to his property and injury to himself and/or any other individual on or around the vessel arising from duties assumed under this agreement, including, but not limited to, fire, theft, vandalism, water damage, collision, wind, rain and/or storm damage, whether from a named storm or not, unless said damage arises from the gross negligence or willful misconduct of Yacht Management. Further, Yacht Management shall not be liable for any consequential, incidental or specific damage, including loss of use of vessel, of any kind or type whatsoever unless said damage arises from the gross negligence or willful misconduct of Yacht Management.

(Exhibit A, ¶ 12).

12.    On September 26, 2022, Yacht Management filed a Verified

Complaint foreclosing an alleged maritime lien for necessaries on the

Defendant Vessel and seeking $116,947.72 in unpaid repairs from

Defendant for breach of maritime contract and unjust enrichment.

(ECF 1)

13. Defendant and the Vessel deny the allegations in the Verified Complaint.

14. On November 7, 2022, Defendant filed a Counterclaim alleging that Yacht Management is liable for various causes of action arising from Yacht Management's alleged defective repairs. (ECF 8).

15. Yacht Management denies the allegations in the Counterclaim. ECF No. 36. All of these facts are properly in the summary judgment record.

The following facts listed in Yacht Management's Statement of Material Facts are not included in the stipulated facts, are supported by record evidence, and are not genuinely disputed by Mr. Small's affidavit or the deposition excerpts appended to his Response:

- On November 12, 2020, Defendant contacted Plaintiff and requested that Plaintiff provide an estimate to repair the mechanical, electrical, and plumbing systems on the Vessel. (Small Dep. 78:5-20).

- On December 4, 2020, Defendant received the estimate from Plaintiff and found the charges estimated by Plaintiff to be reasonable. (Small Dep. 98:14-17; 102:11-16; Ex. A).

- Prior to entering into the Service Agreement, Defendant had an opportunity to propose changes to the agreement, but never proposed any such changes. (Small Dep. 129:10-17).

- As part of its Counterclaim, Defendant does not allege that Plaintiff acted with gross negligence or willful misconduct in performing the repairs on the Vessel. (ECF No. 8).

ECF No. 24 at ¶¶2, 3, 7, 12. Therefore, I will deem these facts undisputed for purposes of the summary judgment motion.

I also will consider Mr. Small's affidavit and the deposition excerpts appended to his Response. ECF Nos. 28-1, 28-2. These materials should have been filed as a separate Statement of Material Fact. S.D. Fla. L.R. 56.1(b)(2). Even though they were not properly filed, Yacht Management filed a Reply in which it had a full opportunity to respond to the facts in these materials and to submit additional contradictory evidence. ECF No. 32. Yacht Management was not prejudiced by Mr. Small's noncompliance with Local Rule 56.1, so, I will not impose the remedy of ignoring these facts.[2]

Both parties proffer facts relevant to whether Mr. Small gave Yacht Management notice and an opportunity to cure any defective repairs. For reasons discussed more fully below, this evidence is not material to the issues raised on summary judgment. Therefore, I do not consider the following facts proffered by Yacht Management, even accepting them as true:

---

[2] Further evidence of lack of prejudice is that Yacht Management filed Mr. Small's entire deposition as an exhibit to its Statement of Material Facts. ECF Nos. 24-1, 24-2. Therefore, the excerpts that Ms. Small appended to his Response were already in the record.

- Pursuant to the Service Agreement, Defendant agreed to give Plaintiff notice and an opportunity to cure any defective repairs on the Vessel. (Small Dep. 138:17-24; Ex. B).

- Pursuant to the Service Agreement, Plaintiff agreed to investigate and repair all damage caused by defective repairs performed by Plaintiff on the Vessel. (Ex. B).

- Pursuant to the Service Agreement, Defendant agreed to release Plaintiff from all claims related to the Vessel, except those that arise under the warranty or from its gross negligence or willful misconduct. (Ex. B).

- Prior to filing the Counterclaim, Defendant never submitted a warranty claim to Plaintiff for the alleged defective repairs as required by the Service Agreement. (Small Dep. 135:11-16).

- Prior to filing the Counterclaim, Defendant never gave written notice of the alleged defective repairs as required by the Service Agreement. (Small Dep. 135:17-20).

- Prior to filing the Counterclaim, Defendant never gave Plaintiff an opportunity to cure the alleged defective repairs as required by the Service Agreement. (Small Dep. 139:1-2).

ECF No. 24 at ¶¶8-10, 13-15. For the same reason, I do not have to resolve whether Mr. Small's affidavit contradicts his deposition testimony on whether he gave proper notice.

11

B. *Merits*

Counterclaim I alleges a general breach of the Service Agreement. Counterclaim II alleges a breach of the Service Agreement's implied warranty of workmanlike performance. Counterclaim III asserts a claim under the Florida Deceptive and Unfair Trade Practices Act. The parties agree that federal maritime law applies when interpreting the Service Agreement. ECF No. 25 at 3-4; ECF No. 28 at 9.

Paragraph 15 of the Service Agreement, ECF No. 24-4 ¶15, comprised two components. First, Yacht Management gave an express limited warranty that required written notice and an opportunity to cure:

> Yacht Management warrants to Owner that its services will be performed in a competent manner and will be free from defects in workmanship and materials for a period of sixty (60) days after completion of the services. If any defects in workmanship and materials are discovered, Owner shall promptly notify Yacht Management in writing thereof. Upon the return of the defective work to Yacht Management's facility in Fort Lauderdale, Florida, Yacht Management shall re-perform the defective portion of the service and will correct any damage to the vessel and/or equipment upon which this service was performed at the option of Yacht Management by either repairing or replacing any damaged part resulting from faulty service.

(the "60-Day Limited Warranty"). Second, the parties agreed that there were no other express or implied warranties:

> It is specifically understood and agreed that no other warranties, express or implied, are or will be deemed to have been made by Yacht Management with respect to services performed by Yacht Management. The implied warranties of merchantability, workmanship and fitness are specifically disclaimed.

(the "Limited Liability Clause").

Separately, Mr. Small released Yacht Management from "all claims for damage to the vessel, its engines, equipment and appurtenances . . . arising from duties assumed under this agreement . . . unless said damage arises from the gross negligence or willful misconduct of Yacht Management." *Id.* ¶12 ("the Release").

Yacht Management argues that the Limited Liability Clause and Release terms of the Service Agreement preclude Mr. Small from bringing his counterclaims. Mr. Small responds that there are disputed material facts that preclude summary judgment.

The parties extensively debate whether Mr. Small gave adequate notice and opportunity to cure. This point is irrelevant to the issues before the Court. The notice-and-cure provision only affects whether Mr. Small can invoke the 60-day Limited Warranty. His counterclaims do not allege that Yacht Management breached that warranty — Counterclaim I alleges various breaches of the Service Agreement but does not allege that Yacht Management breached the 60-Day Limited Warranty; Counterclaim II alleges breach of the implied warranty of workmanlike performance, not the 60-Day Limited Warranty; Counterclaim III does not allege that Yacht Management failed to live up to the 60-Day Limited Warranty.[3] And, the Release (if enforceable) would bar any claims unrelated to the Limited 60-Day Warranty, even if Mr. Small had complied with the notice-and-cure requirements. For all these reasons, Mr. Small's compliance with the notice-and-cure provision is irrelevant.

---

[3] In any event, the undisputed facts show that the 60-Day Limited Warranty was not breached. That warranty kicks in only "after completion of the services." It is undisputed that Yacht Management never finished the repairs on the vessel.

1. <u>Counterclaim II</u>

Assuming the Limited Liability Clause is enforceable, summary judgment must be granted on Counterclaim II. That counterclaim alleges a breach of an implied warranty. ECF No. 28 at 10. The Limited Liability Clause clearly and unequivocally says there are no implied warranties incorporated into the Service Agreement. The only warranty is the express 60-Day Limited Warranty. So, if the Limited Liability Clause is enforceable, Counterclaim II fails.

Mr. Small's sole argument for why the Limited Liability Clause is not enforceable is that "the gross and incompetent work of Yacht Management and refusal to cure defects acted as a waiver of the contractual warranty clause defenses." *Id.* at 12. He relies on the Eleventh Circuit's decision in *Edward Leasing Corp. v. Uhlig & Associates, Inc.,* 785 F.2d 877 (11th Cir. 1986).

*Edward Leasing* does not apply. There, a marine repair company contracted to fix a vessel's engines. Despite repeated attempts, the engines were never properly repaired. Ultimately, the vessel owner took the engines elsewhere to be repaired. The vessel's owner sued the repair company for breach of contract. The contract contained a warranty clause under which the repair company would have been required to fix the engines at no cost to the vessel owner. The repair company argued that the vessel owner waived the benefits of the breached contract and/or frustrated the repair company's attempts to perform the repairs under the warranty. *Id.* at 886. The appellate court rejected this argument, finding it "was not unreasonable under the

circumstances for Edward Leasing to seek out [a different entity] to rebuild the engine." *Id.* at 887.

Our situation is different. Unlike the defendant in *Edward Leasing,* Yacht Management is not saying that Mr. Small waived the benefits of the 60 Day Limited Warranty. Instead, Mr. Small is arguing that Yacht Management waived the Limitation of Liability Clause. *Edward Leasing* does not support that argument.

In *Edward Leasing,* the contract also contained limitation of liability clauses that were deceptive, ambiguous, and completely absolved the repair company of any liability. The Eleventh Circuit found these clauses unenforceable as against public policy. *Id.* at 888. It noted, however, that limitation of liability clauses could be enforceable in other circumstances.

In its later decision in *Diesel "Repower", Inc. v. Islander Invs. Ltd*, the Eleventh Circuit laid out the test for evaluating limitation of liability clauses:

> [T]he court must apply a three-step test to determine whether the limitation on liability clause is enforceable. First, the clause must clearly and unequivocally indicate the parties' intentions. Second, the clause may not absolve the repairer of all liability and the liability risk must still provide a deterrent to negligence. Third, the "businessmen" must have equal bargaining power so there is no overreaching.

271 F.3d 1318, 1324 (11th Cir. 2001). Yacht Management argues that the Limitation of Liability Clause is enforceable under this test. Mr. Small does not respond to this argument, so it is conceded. *Singh v. Royal Caribbean Cruises Ltd.,* 576 F. Supp. 3d 1166, 1192 (S.D. Fla. 2021) ("Generally, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim

abandoned.") (quoting *Jones v. Bank of Am., N.A.,* 564 Fed. App'x 432, 434 (11th Cir. 2014)).

Even if it the argument were not conceded, the Limitation of Liability Clause satisfies the *Islander* test. First, it clearly and unambiguously excludes all other express or implied warranties. Second, coupled with the Release, it does not absolve Yacht Management of all liability; gross negligence or willful misconduct is still actionable. Third, Mr. Small has 40 years of experience in the construction industry. He had a full opportunity to review the Service Agreement and to propose changes. There is no evidence that other marine repair shops were unavailable in the Fort Lauderdale area. So, even viewed in the light most favorable to Mr. Small, the facts in the record do not show unequal bargaining power, let alone inequality that rises to the level of overreaching.

For all these reasons, summary judgment should be granted on Counterclaim II.

2.  Counterclaims I and III

The Release bars Counterclaims I and III unless there was gross negligence or willful misconduct by Yacht Management.

As then-District Judge Jordan explained, "Gross negligence in an admiralty case is shown 'where a defendant knows of the risk of harm created by the defendant's conduct or knows facts that make the risk obvious to another in the defendant's situation and disregards that risk.'" *Great Lakes Reinsurance (UK) PLC v. Sunset Harbour Marina, Inc.,* No. 10-24469-CIV, 2012 WL 13012738, at *5 (S.D. Fla. Jan. 4,

2012) (quoting *Lobegeiger v. Celebrity Cruises, Inc.*, 2011 WL 3703329, at \*17 (S.D. Fla. 2011)). "The type of negligence, 'ordinary' or 'gross' depends on the particular circumstances of each case." *Todd Shipyards Corp. v. Turbine Serv., Inc.*, 674 F.2d 401, 411 (5th Cir. 1982) (citations omitted).

The evidence in the record of alleged gross negligence is that

- "[T]he majority of the work was not completed and most of the completed work was done incorrectly, not to ABY standards, was grossly negligent and had to be redone by qualified individuals." Small Affidavit, ¶4

- "I along with others working on the vessel project were in constant contact with Yacht Management to correct the flaws but they did not correct them." *Id.* ¶5

- "On July 26, 2022, prior to the lawsuit, I met with Yacht Management and showed them the reports of the failed work and they did not offer to fix it and only wanted to get paid for past invoices." *Id.* ¶6

- Yacht Management was "incompetent, grossly negligent and could not finish the work needed to make the vessel seaworthy and place it into navigation." *Id.* ¶7.

- "During the time Yacht Management had possession of the vessel they negligently perform[ed] work as to fabrication and installation of engine mounts, generator mounts, electrical systems and other work; utilized the wrong hose fittings for the hydraulic systems which had

17

to be redone, failed to properly mount and align the shafts and gears, over billed for services, delayed in performing the work, had inadequate manpower to complete the work, failed to provide timely progress reports and timesheets; installed incorrect parts including engine, generator and electrical components, fail to install correct exhaust system; and allowed the engine hatch to be exposed to the elements requiring repair." *Id.* ¶10.

- The Vessel had been under repair for two years and still was not seaworthy. ECF No. 28-2.

- Yacht Management had connected the fuel supply incorrectly and had failed to connect the exhaust. *Id.*

Some of this evidence is not entitled to weight. Mr. Small's conclusion that Yacht Management was grossly negligent is a legal conclusion. Similarly, the record does not support a finding that he is competent to opine on whether the repairs met industry standards, so I will disregard his statement about ABY standards.

Viewing the rest of the evidence in the light most favorable to Mr. Small, a reasonable trier of fact could conclude that Yacht Management was grossly negligent. The vessel repairs had been ongoing for over two years. Mr. Small had registered complaints and had repeatedly pointed out flawed workmanship. Despite these complaints, the vessel was not made seaworthy, which inflicted continuing harm to Mr. Small. Yacht Management was aware that Mr. Small was being harmed by being denied the use of his vessel during the ongoing repairs. Considering all of these facts,

a reasonable trier of fact could find that Yacht Management was aware that its failure to timely and properly complete the repairs risked ongoing harm to Mr. Small and that Yacht Management disregarded that risk.

One last point. Yacht Management notes, and Mr. Small does not dispute, that the counterclaims do not allege gross negligence. This fact is not relevant to whether summary judgment should be granted. The counterclaims were required only to be "a short and plain statement of the claim showing that [Mr. Small] is entitled to relief." Fed. R. Civ. P. 8(a)(2). They were required only to include sufficient facts to state a plausible claim for relief. *See Ashcraft v. Iqbal,* 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). Yacht Management did not challenge whether the counterclaims properly stated a claim upon which relief could be granted.

Gross negligence is only relevant to whether the Release is enforceable. Release is an affirmative defense that is waived if not pled in response to a claim. Fed. R. Civ. P. 8(c); *Keybank Nat'l Ass'n v. Hamrick,* 576 F. App'x 884, 888 (11th Cir. 2014). Here, Yacht Management's fifth affirmative defense was that the Service Agreement released the counterclaims. ECF No. 9 at 4-5. The counterclaims were not required to anticipate and preempt Yacht Management's affirmative defenses. For these reasons, the fact that Mr. Small did not plead gross negligence in his counterclaims does not affect the summary judgment analysis.

## RECOMMENDATION

WHEREFORE,[4] it is recommended that Yacht Management's Motion for Summary Judgment be GRANTED as to Counterclaim II and DENIED as to Counterclaims I and III.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Roy K. Altman, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

---

[4] The English word "*wherefore* has clear Germanic roots, and other Germanic languages have their own versions of that word like Swedish *varfor*, Danish *hvorfor*, Dutch *waarvoor*, and German *wofür*. All of those Germanic words are cognate with English *wherefore,* and they all carry that sense of 'why' for 'for what.'" Kevin Stroud, History of English Podcast, Episode 175: *The English of Romeo and Juliet* (Transcript page 16), https://historyofenglishpodcast.com/wp-content/uploads/2024/03/HOE-Transcript-Episode175.pdf (last visited June 14, 20224).

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 17th day of June 2024.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE